1
2
3
4
5
6
7
8
9            **UNITED STATES DISTRICT COURT**

10           **EASTERN DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12  EDWARD C. HUGLER, Acting Secretary of Labor, United States Department of Labor | **CASE NO. 1:16-CV-01156-AWI-EPG** |
| 13                    Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION** |
| 14         v. | |
| 15  VALLEY GARLIC, INC., dba SEQUOIA PACKING CO., a California Corporation; | |
| 16  CHRISTIAN BARRERE MARRIONE, an individual; DAVID CLARK ANDERSON, | **(Doc. 43)** |
| 17  an individual; X-TREME AG LABOR, INC., a California corporation; ISABELLA | |
| 18  ALVAREZ CAMACHO, an individual; OFELIA RAMIREZ MORALES, an | |
| 19  individual; and CESAR NERI, an individual, | |
| 20 | |
| 21                    Defendants. | |

22                              **I. Introduction**

23          Plaintiff Edward C. Hugler is the Acting United States Secretary of Labor (the

24   "Secretary"). He seeks reconsideration of the Court's order denying issuance of a preliminary

25   injunction. The injunction that the Secretary seeks would enjoin Defendant Valley Garlic Inc.[1]

26   from causing vehicles to be used to transport migrant and seasonal agricultural workers without

27

───────────────

28   [1] When the Court refers to "Valley Garlic," it includes Valley Garlic's named employees—Christian Barrere Marrione and David Clark Anderson.

ensuring the vehicle safety requirements of 29 U.S.C. § 1841 ("Section 1841") are met. Doc. 34. After considering the Secretary's motion for preliminary injunction, the Court determined that the Secretary was not entitled to a presumption of irreparable injury and the Secretary's showing of irreparable injury was inadequate to carry his burden. The Secretary now (1) submits new evidence to support his claim of irreparable injury and (2) contends that the court erred[2] in failing to recognize that Valley Garlic's violation of the vehicle safety provisions of the Agricultural Workers Protection Act ("AWPA") is likely to cause irreparable injury.

For the following reasons, The Secretary's motion for reconsideration will be denied.[3]

## II. Background

On February 27, 2017, this Court resolved the Secretary's second motion for preliminary injunction. The Court first found a likelihood of success on the merits of the Secretary's claim. The Court found that Valley Garlic employs the field workers recruited by its farm labor contractors ("FLCs") within the meaning of the Agricultural Workers Protection Act, 29 U.S.C. § 1801, et seq. ("AWPA"). Doc. 41 at 7-19; see 29 U.S.C. § 1802(5). The Court also found that Valley Garlic knows that transportation by an FLC is a necessary element in recruitment of at least some of its workers and Valley Garlic has done nothing to preclude that transportation. Doc. 41 at 19-23. Valley Garlic conceded not having taken the safety measures required under Section 1841. The Court concluded that Valley Garlic is violating Section 1841 by causing to be used vehicles transportation of its agricultural employees by FLCs without implementing the safety measures required by Section 1841.

To meet the irreparable injury prong, the Secretary relied primarily on a presumption of irreparable injury. The Court declined to apply such a presumption in light of the Supreme Court's prohibition of categorical rules governing the exercise of equitable jurisdiction without clear Congressional indication to the contrary. Doc. 41 at 27-29; *Porter v. Warner Holding Co.*,

---

[2] Although the Secretary does not identify any "clear error," the Court will assume that, insofar as the Secretary's motion is based on material other than the new evidence presented, the Secretary suggests (without explicitly stating) that the Court committed clear error. Otherwise, the Secretary's use of a motion to reconsider would be an improper attempt to recapitulate arguments already considered and decided.

[3] The Secretary submitted additional evidence after the Court had taken the matter under submission. Valley Garlic objects to the Court's consideration of that evidence. Because that evidence would not impact Court's conclusion, it is not considered.

328 U.S. 395, 398 (1946); *see Cottonwood Environmental Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1089-1090 (9th Cir. 2015). In making that determination, the Court considered the language, history, structure, and underlying policy of the AWPA to conclude that Congress did not intend to limit the Court's full consideration of equitable factors. Doc. 41 at 29-32. The Court concluded that, absent the presumption of irreparable harm, the Secretary's showing of irreparable harm was inadequate. On that basis it denied the Secretary's motion for preliminary injunction.

### III. Legal Standard

A district court should not grant a motion for reconsideration "absent highly unusual circumstances." *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (citations omitted). Specifically, Local Rule 230(j) requires Plaintiff seeking reconsideration of an order to show "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion and … why the facts or circumstances were not shown at the time of the prior motion." Local Rule 230(j) (E.D. Cal.); *see Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (internal quotations marks and citations omitted) ("A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.") Reconsideration is an "extraordinary remedy," to be used "sparingly as an equitable remedy to prevent manifest injustice." *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)); *Lal v. California*, 610 F.3d 518, 524 (9th Cir. 2010). "A motion for reconsideration 'may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.'" *Marlyn Nutraceuticals*, 571 F.3d at 880 (emphasis in original).

"A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation ..." of that which was already considered by the Court in rendering its decision." *United States v. Westlands Water Dist.*, 134 F.Supp.2d 1111, 1131 (E.D. Cal.

2001); *see Maraziti v. Thorpe*, 52 F.3d 252, 255 (9th Cir. 1995) (A motion to reconsider is properly denied when it "merely reiterate[s] the arguments … already presented.")  To succeed, the new facts or law set forth must be of a strongly convincing nature to induce the court to reverse its prior decision. *See Kern–Tulare Water Dist. v. City of Bakersfield*, 634 F.Supp. 656, 665 (E.D. Cal. 1986) (affirmed in part and reversed in part on other grounds, 828 F.2d 514 (9th Cir. 1987)).

## III. Discussion

As detailed in more depth below, the Secretary has submitted statistical and anecdotal evidence tending to suggest that use of unlicensed drivers and unsafe vehicles is endemic to the agriculture industry and that such practices are likely to result in catastrophic injury or death. The Court must consider whether the newly submitted evidence should change the irreparable injury determination and "why the facts or circumstances were not shown at the time of the prior motion." Local Rule 230(j) (E.D. Cal.)

### A. Irreparable Injury

In order to obtain preliminary injunctive relief a party must show (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in her favor; and (4) an injunction is in the public interest. *Winter v. Nat. Resources Def. Council, Inc*., 555 U.S. 7, 20 (2008). All of the other considerations having been established, Doc. 41, this order focuses on the second prong. The mere possibility of irreparable harm is insufficient to justify an injunction. *Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013). Instead, a party seeking a preliminary injunction must show irreparable harm is likely. *Herb Reed Enterprises*, 736 F.3d at 1249. The plaintiff must also show a "sufficient causal connection" between the alleged injury and the conduct the plaintiff seeks to enjoin such that the injunction would effectively minimize the risk of injury. *Perfect 10, Inc. v. Google, Inc*., 653 F3d 976, 982 (9th Cir. 2011); *accord Fox Broadcasting Co., Inc. v. Dish Network, LLC*, 747 F.3d 1060, 1072-1073 (9th Cir. 2013) (The irreparable injury caused must "flow from" the violation

to be enjoined.) The activity to be enjoined need not be the exclusive cause of the injury. *M.R. v. Dreyfus*, 697 F.3d 706, 728 (9th Cir. 2012).

In order to establish irreparable injury, the Secretary must show that (1) Valley Garlic's agricultural workers are likely to be transported in by unlicensed drivers or in vehicles that fail to meet the Secretary's safety requirements under Section 1841(b)(2)(A), and (2) such transportation is likely to result in irreparable harm.

1. Reconsideration Based on Evidence Not Previously Submitted

The Court's prior order acknowledged that, absent an injunction, Valley Garlic is likely to continue causing transportation of agricultural workers without verifying that the drivers will have driver licenses and that the vehicles will be safe. Doc. 41 at 34. However, the Court denied issuance of a preliminary injunction in part because of the absence of any showing that an injury like the accident underlying this action was likely to reoccur because of a driver's lack of driver license or unsafe vehicle conditions. In other words, The Secretary submitted no evidence to establish a link between (1) an absence of a driver license and an increased likelihood of accident or (2) failure to comply with the Secretary's vehicle safety regulations and an increased likelihood of accident.

Additionally, the Secretary submitted evidence only regarding the use of unlicensed drivers and unsafe vehicles by X-Treme Ag, a now-defunct farm labor contractor. The Secretary focused almost exclusively on the single vehicle involved in the accident underlying this action. The Court was presented no evidence from which it could conclude that other FLCs presently employed by Valley Garlic utilized unlicensed drivers or unsafe vehicles or whether they are likely to do so in the future.

The Secretary now submits evidence tending to generally suggest that (1) use of unlicensed drivers and unsafe vehicles to transport workers is endemic in the agricultural industry, Doc. 43 at 5, 9;[4] Doc. 44-1, (2) allowing a driver to operate a vehicle without a driver

---

[4] (citing H.R. Rep. 97-885, reprinted in 1982 U.S.C.C.A.N. 4547, 4548 ("FLCs 'tend[] to transport [agricultural workers] in unsafe vehicles….'"; Heather Noel Phillips, *Farm Labor Vehicle Safety in California*, 17 San Joaquin Agric. L. Rev. 201, 202-204 (2008).)

license and use of unsafe vehicles are dangerous practices that have resulted in many agricultural worker injuries and deaths, Doc. 44-1; Doc. 43 at 9,[5] and (3) such practices are also a threat to other drivers on the road, Doc. 43 at 10.[6] The Secretary has further submitted evidence that the likelihood of injury is significantly reduced when the vehicle safety requirements of Section 1841 are complied with. Doc. 44-1. Particular to this action, the Secretary again submits evidence indicating that the driver involved in the accident and two other drivers for the now-defunct X-Treme Ag FLC transported workers without a driver license. The Secretary submits no evidence regarding the driver license status or vehicle safety of any of Valley Garlic's present FLCs or their employees.[7]

The evidence submitted removes any doubt that driving without a license and operating a vehicle that is unsafe under the rules promulgated by the secretary are dangerous practices.

In *Institute of Cetacean Research v. Sea Shepherd Conservation Society*, the Ninth Circuit was presented with "a pirate" whose practice of "ram[ming] ships[,] hurl[ing] glass containers of acid[, and] drag[ging] metal-reinforced ropes in the water to damage propellers and rudders (among other things) was designed to cause harm to the whaling vessels that the pirate targeted. 725 F.3d 940, 942-943, 946 (9th Cir. 2013). The Court explained that the fact that none of the dangerous activities engaged in by the pirate had yet caused actual harm to the whaling

---

[5](citing Ag Innovations Network, *Shelter + Mobility: Recommendations for California's Specialty Crop Ag Workforce* (2014) at 12-13, *available at* http://www.aginnovations.org/result/2015-05-10/shelter-mobility-recommendations-for-california-s-specialty-crop-ag-workforce (last accessed Apr. 24, 2017)).

[6] (citing Cal. Business Trasp. And Housing Agency and Cal. Dep't of Transp., Agricultural Worker Transportation Needs Assessment Final Report (2003), at xvi, available at http://www.dot.ca.gov/hq/MassTrans/Docs-Pdfs/STATE-Aits-Final-Rpt.pdf (last accessed Apr. 24, 2017) ("Perhaps the greatest impact caused by the existing agricultural worker transportation conditions [is the] effect[] [on] traffic safety. This situation is most serious because it affects all drivers on California's roads. . . . [T]here continues to be a major problem caused by unsafe, uninsured, unregistered and overloaded vehicles on California's rural roadways.")

[7] Christian Marrione identified several of the FLCs that Valley Garlic hired in 2014 and 2015: "Esparza," "Ag Star," "Torres," "Mosqueda," and "X-Treme." Doc. 34-2 at 28. An "Esparza Enterprises FLC" appears on the Secretary's list of accidents resulting from unauthorized driving by unlicensed drivers. However, the Secretary makes no representation regarding whether Esparza Enterprises is the Esparza that Valley Garlic employed in 2015 or whether that FLC is currently employed by Valley Garlic. *See* Doc. 44-1 at 4.
The Secretary also submitted evidence tending to suggest that, in 2013, at least two of Valley Garlic's FLCs—Blue Diamond Harvesting and Humberto FLC— "fail[ed] to provide safe transport vehicles" Doc 27-2 at 12-18. However, it is unclear whether Valley Garlic continues to use those FLCs to recruit labor.

vessel that brought suit was "beside the point." The Court instead applied a "common sense" approach: "[a] dangerous act, if committed often enough, will inevitably lead to harm, which could easily be irreparable." *Institute of Cetacean Research v. Sea Shepherd Conservation Soc.*, 725 F.3d at 946 (citing *Harris v. Board of Supervisors*, 366 F.3d 754, 766 (9th Cir. 2004) (finding that irreparable injury to the indigent would result from defunding a rehabilitation center)).

Although unlicensed driving and driving in an unsafe vehicle are dangerous practices, the question remains whether those workers that Valley Garlic causes to be transported will be transported by unlicensed drivers or in unsafe vehicles. The new evidence submitted does not answer that question. Without such information, the Court can conclude that irreparable injury is *possible* but it cannot conclude that irreparable injury is *likely* to result if injunctive relief is not granted.

2. Reconsideration of Prior Conclusion

The Secretary also again emphasizes his position that the accident underlying this action "stemmed directly from" Valley Garlic's violation of Section 1841. The Secretary does not submit new evidence in support of that argument. Instead , the Secretary contends that the Court should have confined its inquiry to whether Valley Garlic, if it had complied "with [S]ection 1841—by either stopping X-Treme Ag from transporting workers in an unsafe vehicle driven by an unlicensed driver, or avoiding the problem of unregulated worker transportation entirely by hiring transportation-authorized FLCs—would have prevented this accident." Doc. 43 at 7. That inquiry stands in contrast to the Court's findings that "no showing has been made that any vehicle used for transportation of workers failed or fails to comply with the safety standards such that it is likely to cause irreparable injury," and that "there is no logical connection between lack of a driver license and an injury caused by falling asleep at the wheel." Doc. 41 at 33.

The Court asked whether the harms against which Section 1841 was designed to protect occurred in this action (or were likely to occur in the future). The Secretary would rather the Court focus on whether the driver involved in the accident would have been permitted to drive

the vehicle if Section 1841 had been complied with.

The Court will assume without deciding that the Secretary's proposed formulation is correct.[8] It is important to remember the relevance of evidence regarding the accident underlying the action to the irreparable injury inquiry; it is anecdotal evidence that Valley Garlic's workers are being transported (1) by unlicensed drivers, (2) in unsafe vehicles. The evidence regarding the underlying accident carries significantly less weight in proving those issues now that X-Treme Ag is no longer in operation. The Secretary's showing was inadequate to meet the likelihood of irreparable injury requirement; the risk of reoccurrence has not been shown as to Valley Garlic and its present FLCs.

**B. Grounds for Consideration of Evidence Not Previously Submitted and Reconsideration of Prior Conclusions**

After having concluded that the evidence now before the Court remains inadequate to find that irreparable injury is likely in absence of injunctive relief, the Court need not decide whether it is appropriate to consider new evidence or whether its prior conclusion was clear error. However, the Court does so in the interest of completeness. The Secretary addresses in a footnote why he did not previously submit the evidence now before the court: "[t]he Secretary did not originally include the detail provided here because, based on the case law cited in briefing, the catastrophic harm already suffered in this case, coupled with Valley Garlic's ongoing violation of section 1841, were more than sufficient to establish a likelihood of irreparable harm." Doc. 43 at 8 n. 4. The Court reads the Secretary's statement as a contention that the Court "committed clear error" in coming to its prior conclusion or that enforcing the court's judgment would result in "manifest injustice" in evidence of the evidence now before the court. *See School Dist. No. 1J v. ACand S, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *Frias v.*

---

[8] The Court has serious reservations about the sufficiency of the causal relationship suggested by the Secretary. For instance, under the Secretary's formulation, if the vehicle involved in the underlying accident had struck unavoidable debris in the road (at no fault of the unlicensed driver), killing all of the inhabitants, the Secretary's positions could remain the same—if Valley Garlic had complied with Section 1841, the vehicle would not have been on the road. Surely, a more direct connection than coincidence of events is necessary.

*Spence*, 2016 WL 6988654, *2 (E.D. Cal. Nov. 29, 2016).[9]

As noted, *supra*, the Court concludes that it did not committed clear error in determining, based on the evidence previously presented, that the Secretary did not show irreparable harm. Next, the newly submitted evidence does not allow the Court to conclude that irreparable harm is likely to result to migrant farm workers or the public in absence of an injunction. As a result, the Court cannot conclude that enforcement of its previous order would result in manifest injustice. The Secretary's motion for reconsideration will be denied for the independent reasons that the Court did not commit clear error in its prior conclusion and the Secretary has not justified the failure to sooner present the evidence now submitted in support of his motion for reconsideration.

### IV. Order

Based on the foregoing, IT IS HEREBY ORDERED the Secretary's motion for reconsideration is DENIED.

IT IS SO ORDERED.

Dated:  May 11, 2017

_____
SENIOR  DISTRICT  JUDGE

---

[9] The Secretary does not suggest that the evidence was not previously available or that there has been an intervening change in the law.

9