UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| R. ALEXANDER ACOSTA, Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>VALLEY GARLIC, INC., dba SEQUOIA PACKING CO., a California corporation; CHRISTIAN BARRERE MARRIONE, an individual; DAVID CLARK ANDERSON, an individual; X-TREME AG LABOR, INC., a California corporation; ISABELLA ALVAREZ CAMACHO, an individual; OFELIA RAMIREZ MORALES, an individual; and CESAR NERI, an individual,<br><br>Defendants. | CASE NO. 1:16-cv-01156-AWI-EPG<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION**<br><br>**ORDER LIFTING STAY AS TO DEFENDANTS CAMACHO AND X-TREME AG** |
|---|---|

**I. Introduction**

On August 24, 2017, this Court granted Plaintiff R. Alexander Acosta's ("Plaintiff" or the "Secretary") motion for partial default judgment. In that Order, the court also noted that Defendants X-Treme Ag Labor, Inc. ("X-Treme Ag") and Isabella Camacho ("Camacho") had filed a notice of bankruptcy. The Court found that, by operation of law, 11 U.S.C. § 362(a), the action against those two defendants was stayed. The Secretary now moves for reconsideration of the imposition of an automatic stay. Defendants Camacho and X-Treme Ag oppose the motion

1

for reconsideration. For the following reasons, the Secretary's motion will be granted.

**II. Background**

At the initiation of this action, X-Treme Ag was a Farm Labor Contractor ("FLC") that recruited, solicited, hired, employed, and transported migrant and seasonal agricultural workers. Compl. at ¶ 9. X-Treme Ag is no longer in operation as a FLC. Defendant Isabella A. Camacho ("Camacho") was the president and 100% shareholder of X-Treme Ag. Compl. at ¶ 10.

X-Treme Ag contracted to supply workers for Valley Garlic, a Garlic producer that is also a defendant in this action, to harvest and plant for the 2015 garlic season. Compl. at ¶ 13. The contracts between X-Treme Ag and Valley Garlic prohibited X-Treme Ag from transporting workers to the Valley Garlic worksites. Specifically, the contracts provide "that [X-Treme Ag] is not authorized to transport any workers who perform work under th[e] Agreement. Further, [X-Treme Ag] agrees that [it] will not allow any crew boss, mayordomo, foreperson, supervisor, or any other person with any supervisory authority to transport any workers who perform work under th[e] Agreement." May 26, 2015 Contract between Valley Garlic and X-Treme Ag., Doc. 24-1 ("First Contract") at 16. Despite the prohibition on X-Treme Ag transporting workers to the Valley Garlic worksites, crew leaders Ofelia Ramirez Morales, Nestor Leon, Jorge Hernandez, Carlos Carbajal, Martin Cuahutenango, Hector Ramirez, and Pedro Torres drove or arranged for transportation for their crew members. Compl. at ¶ 14; *see, e.g.,* Decl. of Norah Pedraza, Doc. 7-4 at ¶ 4. Each crew member was charged approximately $10.00 per day as a transportation fee. Compl. at ¶ 14.

In or around June 2015, Ramirez Morales recruited workers in Merced, California on behalf of X-Treme Ag to work at the Valley Garlic worksites. Compl. at ¶ 15. Ramirez Morales organized transportation of those workers in vehicles driven by Cesar Neri (her boyfriend), her daughter Laura Ramirez, and at least one of the crew members she recruited. Compl. at ¶ 15. Neither Neri nor Ramirez has a valid driver's license. Compl. at ¶ 15. On June 8, 2015, Ramirez Morales instructed Enrique Franco, a field worker she had recruited to work for Valley Garlic, to drive himself and seven other employees from Merced to the Valley Garlic worksites in Gilroy, and back to Merced again, in a white Chevrolet van owned by and registered to Neri. Compl. at ¶

16. Franco did not have a valid driver's license. Compl. at ¶ 16. Franco drove himself and seven other workers as instructed on June 18, 19, and 20, 2015. Compl. at ¶ 16.

On the return trip from Gilroy to Merced on June 20, 2015, Franco fell asleep at the wheel and lost control of the vehicle on California State Highway 152 between Los Banos and Chowchilla. Compl. at ¶ 17. The vehicle crashed and rolled over multiple times, ejecting six passengers from the vehicle. Compl. at ¶ 17. Three workers died on site and one died less than a week later from injuries sustained in the accident. Compl. at ¶ 17. Franco and the remaining three passengers sustained non-fatal injuries. Compl. at ¶ 17.

### III. Legal Standard

A district court should not grant a motion for reconsideration "absent highly unusual circumstances." *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (citations omitted). Specifically, Local Rule 230(j) requires Plaintiff seeking reconsideration of an order to show "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion and … why the facts or circumstances were not shown at the time of the prior motion." Local Rule 230(j) (E.D. Cal.); *see Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co*., 571 F.3d 873, 880 (9th Cir. 2009) (internal quotations marks and citations omitted) ("A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.") Reconsideration is an "extraordinary remedy," to be used "sparingly as an equitable remedy to prevent manifest injustice." *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)); *Lal v. California*, 610 F.3d 518, 524 (9th Cir. 2010). "A motion for reconsideration 'may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.'" *Marlyn Nutraceuticals*, 571 F.3d at 880 (emphasis in original).

"A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation ..." of that which was already considered by the Court in rendering

3

its decision." *United States v. Westlands Water Dist.*, 134 F.Supp.2d 1111, 1131 (E.D. Cal. 2001); *see Maraziti v. Thorpe*, 52 F.3d 252, 255 (9th Cir. 1995) (A motion to reconsider is properly denied when it "merely reiterate[s] the arguments … already presented.") To succeed, the new facts or law set forth must be of a strongly convincing nature to induce the court to reverse its prior decision. *See Kern–Tulare Water Dist. v. City of Bakersfield*, 634 F.Supp. 656, 665 (E.D. Cal. 1986) (affirmed in part and reversed in part on other grounds, 828 F.2d 514 (9th Cir. 1987)).

## IV. Discussion

The Court's August 24, 2017 Order stayed the action as to Camacho and X-Treme Ag without discussion or consideration of the Secretary's August 22, 2017 objection to Defendant's notice of automatic stay. The Court considers the Secretary's argument now in conjunction with the Secretary's motion for reconsideration. The Secretary is correct; the Court's recognition of an automatic stay was in error.

As a general matter, when a debtor files for bankruptcy, the Bankruptcy Code imposes an automatic stay upon pre-petition actions to collect a debt from the debtor. 11 U.S.C. § 362(a). However, the Bankruptcy Code also provides express exceptions to the automatic stay. The Secretary contends that Section 362(b)(4) exempts this action from automatic stay. The Section 362(b)(4) exception excludes "the commencement or continuation of an action or proceeding by a governmental unit...to enforce such governmental unit's...police and regulatory power" from the reach of an automatic stay pursuant to Section 362(a). 11 U.S.C. § 362(b)(4); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1107 ("The 'police or regulatory power' exception allows the enforcement of laws affecting health, welfare, morals, and safety despite the pendency of the bankruptcy proceeding. The exception applies, for example, to suits to determine a federal income tax exemption,… to enforce federal labor laws,… to enforce state bar disciplinary rules,… to enforce federal employment discrimination laws,… and to enforce state consumer protection laws….") (Internal citations omitted). The Ninth Circuit has been clear that the purpose of that exception is to ensure that "bankruptcy [is] not … 'a haven for wrongdoers'" to avoid enforcement actions. *Lockyer*, 398 F.3d at 1107 (quoting *Universal Life Church, Inc. v.*

*United States*, 128 F.3d 1294, 1297 (9th Cir. 1997)).

The parties are in agreement that the Ninth Circuit has articulated "two alternative tests to determine whether the actions of a governmental unit are in exercise of its police and regulatory power" within the meaning of Section 362(b)(4): first, "the 'pecuniary purpose' test" asks "whether the government action relates primarily to the protection of the government's pecuniary interest in the debtor's property or to matters of public safety and health"; second, "the 'public purpose' test" asks "whether the government seeks to 'effectuate public policy' or adjudicate 'private rights.'" *Lockyer*, 398 F.3d at 1108-1109 (citation omitted); *accord City & Cnty. of S.F. v. PG&E Corp.*, 433 F.3d 1115, 1123-1124 (9th Cir. 2006). Doc. 70 at 5-6; Doc. 71 at 2-3. The purpose of the former test "is to prevent suits that would allow a governmental unit to obtain an advantage over creditors or potential creditors in the bankruptcy proceeding." *Lockyer*, 398 F.3d at 1109. The purpose of the latter test is to ensure that the enforcement action is brought to protect a "broader segment of the public" rather than to "advantage discreet and identifiable individuals or entities." *Lockyer*, 398 F.3d at 1109.

Under either test, this action is exempted from the reach of the automatic stay. First, under the pecuniary purpose test, the Secretary seeks to (1) enjoin conduct that violates the Fair Labor Standards Act ("FLSA") and conduct that violates the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), and (2) recover unpaid wages on behalf of the seasonal workers who worked in Valley Garlic's fields. In both of those purposes, the Secretary's goal is other than to protect a governmental pecuniary interest; the Secretary seeks to uphold his obligation to see that the FLSA and AWPA are enforced and to protect a vulnerable class of workers. Furthermore, enjoining a party from using unsafe vehicles, as the Secretary seeks to accomplish in this action, directly relates to public safety and health.

Defendants Camacho and X-Treme Ag argue that the Secretary fails the pecuniary purpose test because he seeks to recover some monetary relief, namely unpaid wages. That the Secretary also seeks to recover unpaid wages on behalf of the impacted workers—in addition to enjoining conduct offending the FLSA and AWPA—does not alter the character of the action. *City & Cnty. of S.F. v. PG&E Corp.*, 433 F.3d at 1126. Actions by a governmental agency

5

pursuant to the FLSA and AWPA are fundamentally law enforcement actions designed to protect the public. *See Id.*; *Perez v. Valley Garlic*, 2017 WL 772147, *20 (E.D. Cal. Feb. 27, 2017) (recognizing that enjoining violations of AWPA transportation safety rules is in the public interest and designed to ensure worker health and safety); *In Re Perez*, 61 B.R. 367, 368 (Bankr. E.D. Cal. 1986) (holding that FLSA and AWPA claims fell within the scope of 11 U.S.C. § 362(b)(4)).

Second, as to the public purpose test, the pending action seeks the enforce AWPA transportation safety requirements that are designed to protect not only the workers who utilize the transportation but all who might come in contact with the vehicles used to transport those workers.

Defendants Camacho and X-Treme Ag rely on *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374 (6th Cir. 2001), for the proposition that FLSA claims to recover unpaid wages serve a private rather than a public interest and therefore do not fall within the scope of 11 U.S.C. § 362(b)(4). Defendants' reliance is misplaced. The *Chao* court addresses only "pure § 216(c)" suits which seek only to recover unpaid wages, overtime, et cetera, on behalf of an identifiable class of workers. *Chao*, 270 F.3d at 391. It did not address the situation now before this Court—the Secretary seeks to enjoin conduct that violates the AWPA and FLSA and seeks unpaid wages for identified underpaid workers. This is not a "pure § 216(c) suit." Indeed, at least one bankruptcy court in this Circuit has expressly found that actions by the Secretary to enforce the FLSA and AWPA advance the public interest and fall within the reach of 11 U.S.C. § 362(b)(4) despite the fact that they sought to recover unpaid wages and penalties. *In Re Perez*, 61 B.R. at 368.[1]

An independent reason exists to lift the stay as to X-Treme Ag. On December 22, 2017, X-Treme Ag's petition for Chapter 7 bankruptcy was dismissed and the action closed. As a result, even if the automatic stay was appropriate when imposed, the stay is now properly lifted as to that defendant.

---

[1] The Court would note that any concern regarding private parties gaining economic advantage over other debtors is at least partially ameliorated by the Bankruptcy Trustee's indication of non-objection to the lifting of the stay in this action. Doc. 72-1 at 9.

For the foregoing reasons, the Court concludes that its prior imposition of an automatic stay without consideration of whether the action fell within the exception created by Section 362(b)(4) was in error. The Secretary's motion for reconsideration will be granted.

**V. ORDER**

IT IS HEREBY ORDERED that the Secretary's motion for reconsideration is GRANTED. The stay imposed as to Defendants Camacho and X-Treme Ag is LIFTED.

IT IS SO ORDERED.

Dated:   January 2, 2018                    _____
                                            SENIOR DISTRICT JUDGE